NOLAN v. NOLAN et al.

(Supreme Court, Appellate Division, Second Department. December 13, 1898.)

1. EVIDENCE—RECORDS—SUFFICIENCY OF AUTHENTICATION.
  Under Code Civ. Proc. § 957, requiring the officer authenticating certified copies of instruments to state that they are correct transcripts of the whole of the original, with which he has compared them, a certified copy of a foreign death certificate is inadmissible, unless the authenticating certificate state that the officer made such comparison.

2. SAME.
  An authentication of a foreign record by a "judge of the county court" of the county in which the record was kept, attested by a certificate of the clerk of such court that the person signing the authentication was at the time of such signing "judge of the county court, * * * duly commissioned and qualified," does not sufficiently comply with Rev. St. U. S. § 906, providing that all public records and exemplifications shall have the same credit given them in every court in the United States as they have in the courts of the state wherein they are kept, where they are attested by their keeper, together with a certificate of the presiding justice of the county or district wherein they are kept that the attestation is in due form, by the proper officer, and further authenticated by the clerk of such court that such presiding justice is duly commissioned and qualified.

3. SAME—DECLARATIONS—DEATH.
  A father's declaration to third persons is inadmissible to prove the death of his son, in the absence of proof that the father has since died.

Appeal from trial term, Kings county.

Action by Clara E. Nolan against Catherine L. F. Nolan and others. There was a judgment for defendants, and plaintiff appeals. Affirmed.

On the trial plaintiff offered a foreign record, authenticated as follows, which was excluded, viz.:

"State of Illinois, Peoria County—ss.: I, Charles A. Rudel, clerk of the county court in and for the said county, in the state aforesaid, the same being a court of record having a seal, do hereby certify the foregoing to be a true, perfect, and complete copy of a return of the death of Elwood G. Eakins, with the original thereof remaining in my office, and have found the same to be a correct transcript therefrom. In testimony whereof I have hereunto set my hand and affixed the seal of said court, at my office in Peoria, this 4th day of March, 1898.                              Chas. A. Rudel, Clerk. [Seal.]

"State of Illinois, Peoria County—ss.: I, Robert H. Lovett, judge of the county court of Peoria county, in the state of Illinois, do hereby certify that Charles A. Rudel, whose name is subscribed to the foregoing certificate of attestation, now is, and was at the time of signing and sealing the same, clerk of the county court of Peoria county aforesaid, and keeper of the records and seal thereof, duly elected and qualified to office; that full faith and credit are, and of right ought to be, given to all his official acts as such, in all courts of record and elsewhere; and that his said attestation is in due form of law, and by the proper officer. Given under my hand and seal this 4th day of March, A. D. 1898. Robert H. Lovett, County Judge. [Seal.]

"State of Illinois, Peoria County—ss.: I, Charles A. Rudel, clerk of the county court in and for said county, in the state aforesaid, the same being a court of record having a seal, do hereby certify that Robert H. Lovett, whose signature is appended to the foregoing certificate, was, at the time of signing the same, judge of the county court of Peoria county, in the state of Illinois, duly commissioned and qualified; that his signature thereto attached is genuine; and that full faith and credit are, and of right ought to be, given to all his official acts as such, in all courts of record and elsewhere. In testimony whereof I have hereunto set my hand and affixed the seal of said court, at my office in Peoria, this 4th day of March, A. D. 1898.

"Chas. A. Rudel, Clerk. [Seal.]"

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Andrew F. Van Thun, Jr., for appellant.

David B. Ogden, for respondent Manufacturers' Trust Co.

George J. O'Keefe, for respondents Nolan.

WILLARD BARTLETT, J. The plaintiff, claiming to be the widow of Thomas Nolan, who died on the 7th day of July, 1897, brought this action for the admeasurement of her dower in certain lands in the city of Brooklyn of which he died seised. At the close of the evidence in her behalf, the learned judge at trial term dismissed the complaint, and from the judgment entered upon such dismissal the plaintiff appeals.

According to her theory of the case, she was married twice: First, to one Elwood Eakins, with whom she lived from March until September, 1892, when he forsook her, and went to Peoria, Ill., where it is said that he died in June, 1894; and, secondly, in the winter of 1894–95, to Thomas Nolan, in whose real property she is now seeking to establish an interest by means of this suit. There is no claim that either marriage was a ceremonial marriage; and certainly, so far as the plaintiff's relations with Nolan are concerned, the testimony, although standing uncontradicted, as of course it must in a case like this, where a nonsuit was ordered, does not necessarily convince the mind that the connection was ever anything but meretricious. However, I am not prepared to say that, if there had been no proof of a former marriage, it would not have been sufficient to present a question which ought to have been submitted to the jury. In some respects the evidence is stronger than was that in the case of Fagan v. Fagan (Sup.) 11 N. Y. Supp. 748, cited by the respondents. There is proof that Nolan accompanied the plaintiff to the Roman Catholic Church on the occasion of the baptism of their child, when the priest asked him what his wife's maiden name was, referring to the plaintiff, and Nolan answered Clara Edsall. There

is also other evidence in the case to the effect that Nolan referred to the plaintiff more than once not merely as Mrs. Nolan, but as his wife. These facts, in addition to the other proof, would perhaps sustain a finding to the effect that there was a nonceremonial marriage between the parties, unless the jury found that the plaintiff at the time referred to was incapable of contracting a marriage with Nolan by reason of the fact that she had previously been married to Eakins, who, so far as appeared, was still alive.

The plaintiff's brother, who was called as a witness in her behalf, swore positively that she was married to Eakins in 1892 or 1893, and that there was a baby born of that marriage; that he treated Eakins as his brother-in-law; and that it was generally recognized in the family that Eakins was the husband of the plaintiff, and that the child (who was called Harry Eakins) was their child. To show, however, that this prior marriage constituted no obstacle to her alleged subsequent marriage with Nolan, the plaintiff attempted to prove that Eakins died at Peoria in June, 1894, and for that purpose there was offered in evidence a paper purporting to be a certified copy of a physician's certificate of death, on record in the office of the clerk of the county court of Peoria county, Ill. This paper was excluded upon the objection of the respondents, and an exception was duly taken in behalf of the plaintiff. The plaintiff also excepted to the ruling of the trial court excluding evidence that the father of Eakins had told a witness at Peoria, in 1894, that Eakins was dead. There being no other exceptions in the record, not even to the direction of a nonsuit, these two exceptions to the exclusion of evidence raise the only questions which are presented upon this appeal.

If it had been proved that the record of death was made pursuant to the statutes of Illinois, such record would have been competent evidence of the fact of death, under the rules of the common law, and a certified copy thereof would have been admissible, if duly authenticated. Greenl. Ev. § 484; Whart. Ev. § 633; Jackson v. King, 5 Cow. 237. We should assume, I think, that a record of the kind is authorized to be kept by the laws of Illinois, as the plaintiff's counsel offered to prove that fact. Nevertheless, the certified copy was properly excluded for want of the authentication prescribed by our Code of Civil Procedure, § 956. The person making the certificate must state "that it has been compared by him with the original and that it is a correct transcript therefrom, and of the whole of the original." Id. § 957. This certificate contains no statement that any comparison has been made. The objection by defendants' counsel was expressly directed to the insufficiency of the authentication, and it cannot be said that the point was not fairly raised. If, as is contended in behalf of the appellant, the Revised Statutes of the United States control as to the form of authentication in such a case as this, the certificate is still insufficient for not showing that it was made by "a duly commissioned and qualified" presiding justice of the Illinois court. Rev. St. U. S. § 906.

It is equally clear that the trial court was right in refusing to receive testimony that the father of Eakins had said that he was dead.

54 N.Y.S.—62

There was no proof or suggestion that the father was not alive and available as a witness to the fact of his son's death, if his son was dead, at the time of the trial; and it is well settled that the declaration of a living person as to such a fact as this cannot be received in lieu of his sworn testimony as a witness in the cause. If the father of Eakins could testify to the death of his son, nothing could be simpler than to take his testimony by commission in Illinois.

Different questions would have arisen in this case if the plaintiff, instead of asserting, had denied that she was married to Eakins. The evidence as to her relations with him permitted conflicting inferences, depending upon how that evidence was viewed; and, if the plaintiff had asked to go to the jury upon the proposition that she had never been the wife of Eakins, I am inclined to think it would have been error to refuse the request. When she rested her case, however, the position of the plaintiff was simply this: She had introduced proof tending to show that she had been married to Eakins, but had failed to offer any competent evidence that Eakins had died before her alleged marriage to Nolan. In view of the fact that she insisted upon maintaining that her relation with Eakins was that of marriage, the learned trial judge was right in dismissing the complaint.

Judgment affirmed, with costs. All concur.